**IN THE UNITED STATES BANKRUPTCY COURT FOR THE**
**EASTERN DISTRICT OF TENNESSEE**

In re

                                                    Case No.  04-35070

JAMES G. EARLE, JR.

            Debtor

**MEMORANDUM ON MOTION FOR AUTHORITY**
**TO COMPROMISE CLAIM *NUNC PRO TUNC*, MOTION FOR**
**TURNOVER, AND SHOW CAUSE ORDER**

**APPEARANCES:**    LITTLE & MILLIGAN, PLLC
                            F. Scott Milligan, Esq.
                            900 East Hill Avenue
                            Suite 130
                            Knoxville, Tennessee  37915
                            Attorneys for William T. Hendon, Trustee

                        CHARLES TERRY WEBBER, JR., ESQ.
                            Suite 1832, First Tennessee Plaza
                            800 South Gay Street
                            Knoxville, Tennessee  37929
                            Respondent, *Pro Se*

                        JAMES G. EARLE, JR.
                            6413 Chevas Circle
                            Knoxville, Tennessee  37918
                            Debtor, *Pro Se*

                        RICHARD F. CLIPPARD, ESQ.
                        UNITED STATES TRUSTEE
                            Patricia C. Foster, Esq.
                            800 Market Street
                            Suite 114
                            Knoxville, Tennessee  37902
                            Attorneys for United States Trustee

**RICHARD STAIR, JR.**
**UNITED STATES BANKRUPTCY JUDGE**

Before the court are the following contested matters: (1) a Motion For Authority to Compromise Claim *Nunc Pro Tunc* (Motion to Compromise), filed by William T. Hendon, Chapter 7 Trustee (Trustee), on August 2, 2007, seeking authorization to settle a personal injury lawsuit styled *James G. Earle, Jr. v. Tonya D. Powell and Duane G. Powell*, Case No. CAL04-16109, formerly pending in the Circuit Court for Prince George's County, Maryland (Personal Injury Lawsuit), for $15,500.00; and (2) a Motion For Turnover filed by the Trustee on August 2, 2007, seeking an order requiring the Debtor to turnover the non-exempt portion of $11,164.42 disbursed to him on February 6, 2006, following settlement of the Personal Injury Lawsuit.  Also before the court is its *sua sponte* Order entered on September 7, 2007, as amended by the Amended Order entered on September 27, 2007 (Show Cause Order), directing the Trustee's special counsel, Charles T. Webber, Jr., to show cause why he should not be required to disgorge and turnover to the Trustee the entire $15,500.00 in settlement proceeds less any amount allowable to the Debtor as exempt.

An evidentiary hearing was held on November 7, 2007.  The record before the court consists of ten exhibits introduced into evidence and the testimony of four witnesses, Edward J. Shultz, William T. Hendon, Trustee, Mr. Webber, and the Debtor.  Additionally, the court, pursuant to Rule 201 of the Federal Rules of Evidence, takes judicial notice of undisputed material facts of record in the Debtor's bankruptcy case file.[1]

This is a core proceeding.  28 U.S.C. § 157(b)(2)(A), (E), (O) (2005).

---

[1] Paragraph 5 of the Show Cause Order specifies certain facts and documents judicially noticed by the court.

# I

The Debtor, represented by Attorney Charles T. Webber, Jr., filed the Voluntary Petition commencing his Chapter 7 bankruptcy case on September 24, 2004. At the time of filing, the Personal Injury Lawsuit was pending, having been filed as a result of an automobile accident involving the Debtor which occurred on August 26, 2001. The Debtor did not, however, list this action in his statements and schedules, although he disclosed its existence to the Trustee at his meeting of creditors held on December 7, 2004. *See* TRIAL EX. 6; TRIAL EX. 7. Also pending when the Debtor filed his bankruptcy case and disclosed was a workers' compensation action filed in the Knox County Chancery Court also stemming from the August 2001 automobile accident. This action was settled post-petition for $40,000.00.[2] Pursuant to this settlement, CNA Insurance reserved a subrogation claim in any proceeds that might be recovered in the Personal Injury Lawsuit.

An Order was entered on January 31, 2005, granting the Trustee's Application to Employ Attorney filed on January 24, 2005, and Edward J. Shultz and his law firm were employed to represent the Trustee generally with regard to legal matters arising out of the Trustee's administration of the estate.[3] Thereafter, on March 21, 2005, the Trustee filed an Application to Employ as Special Counsel Gregory Lockwood, Stephen J. Cox, and Charles T. Webber (Application to Employ) for

---

[2] On February 3, 2005, the Debtor amended his Statement of Financial Affairs to reflect both the existence of the Personal Injury Lawsuit and settlement of the workers' compensation action. Additionally, he filed amended Schedules B and C on September 19, 2007, to list and claim exempt, respectively, the funds he received from the settlement of the Personal Injury Lawsuit. *See* COLL. TRIAL EX. 8.

[3] When it became apparent that Mr. Shultz would be a witness in the present matters, the Trustee, on October 22, 2007, was authorized to substitute F. Scott Milligan as his general counsel.

the special purpose of prosecuting the Personal Injury Lawsuit.[4] In a letter dated March 22, 2005, Mr. Shultz forwarded a copy of the Application to Employ to Mr. Webber, stating in material part:

> Please be aware that you are employed by the bankruptcy trustee, rather than the debtor. Any settlement in the personal injury case must be approved by the trustee and must be contingent upon the approval of the Bankruptcy Court.

TRIAL EX. 1. On March 24, 2005, the court entered an Order approving the Trustee's employment of Mr. Webber, Gregory Lockwood, and Stephen Cox as special counsel which provides, *inter alia*, that compensation will be paid "in such amounts as may be allowed by the court upon proper application." On April 25, 2005, the Trustee filed a Notice of Assets and the bar date for filing proofs of claim was fixed at July 27, 2005. The Trustee has not filed a no asset report nor has he abandoned any of the estate's assets either on his own or at the request of a party in interest.

On September 19, 2005, Mr. Webber advised the Trustee, through his general counsel, Mr. Shultz, that the defendants in the Personal Injury Lawsuit had made a settlement offer of $18,500.00, which Mr. Webber found to be reasonable and which Mr. Lockwood recommended be accepted. *See* TRIAL EX. 2. Additionally, in this letter, Mr. Webber inquired as to "whether the creditors will be receiving any of the proceeds or will CNA Insurance receive those funds pursuant to their subrogation interest." TRIAL EX. 2. Mr. Shultz testified that this letter was the first time Mr. Webber had mentioned a subrogation interest and that upon researching this issue he concluded that CNA's subrogation claim would "trump" the estate's interest in any settlement proceeds. Mr. Shultz then

---

[4] (e) The trustee, with the court's approval, may employ, for a specified special purpose, other than to represent the trustee in conducting the case, an attorney that has represented the debtor, if in the best interest of the estate, and if such attorney does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed.

11 U.S.C. § 327(e) (2005).

4

advised Mr. Webber that if there was to be nothing for the estate, the Trustee would abandon the estate's interest in the settlement.

Thereafter, CNA waived its subrogation claim and in early February 2006, Mr. Webber settled the Personal Injury Claim for $15,500.00. He disbursed the settlement proceeds on February 6, 2006, as follows: (1) attorneys' fees of $3,105.00 to himself, Gregory Lockwood, and Stephen Cox; (2) expenses of $511.97 to Mr. Lockwood; (3) expenses of $318.61 to Mr. Cox; (4) expenses of $400.00 to himself; and (5) $11,164.42 to the Debtor. COLL. TRIAL EX. 4. Mr. Webber did not inform the Trustee that CNA Insurance had waived its subrogation claim nor did he obtain authorization to settle the Personal Injury Lawsuit. Similarly, because the Trustee had no knowledge of the settlement, he did not seek court approval or the payment of attorneys' fees to special counsel, nor were any of the settlement proceeds remitted to the Trustee for the benefit of the Debtor's bankruptcy estate. The Trustee, upon discovering the unauthorized settlement, subsequently filed the Motion to Compromise, seeking *nunc pro tunc* approval of the settlement as being in the best interests of the Debtor's bankruptcy estate.

In the spring of 2007 when the Trustee was notified about the settlement,[5] and on May 2, 2007, Mr. Webber faxed copies of the settlement documents to Mr. Shultz. Pursuant to a letter from Mr. Shultz to Mr. Webber dated May 24, 2007, the Trustee demanded disgorgement of the settlement funds disbursed by Mr. Webber to himself and the Debtor within ten days. When he did

---

[5] The record does not establish the exact date upon which the Trustee and his general counsel, Mr. Shultz, discovered that Mr. Webber had unilaterally settled the Personal Injury Lawsuit. However, correspondence between the Trustee and Mr. Webber indicates that the Trustee first became aware of the settlement in April or May 2007, over a year after the fact. *See* TRIAL EX. 4, 5.

5

Case 3:04-bk-35070-rs Doc 53 Filed 11/16/07 Entered 11/16/07 16:04:27 Desc
Main Document Page 6 of 13

not receive payment from Mr. Webber and/or the Debtor, the Trustee filed the Motion for Turnover.[6] As of the date of trial, the Trustee had not received any monies paid by Mr. Webber from the settlement proceeds realized in the Personal Injury Lawsuit from any source. *See* TRIAL EX. 5.

## II

The first issue before the court is whether the settlement should be approved *nunc pro tunc*. Settlements "are favored by the courts, especially in bankruptcy matters, and they will rarely be set aside absent fraud, collusion, mistake or other such factors as would undo a contract." *Bradlees Stores, Inc. v. St. Paul Fire & Marine Ins. Co. (In re Bradlees Stores, Inc.)*, 291 B.R. 307, 311 (Bankr. S.D.N.Y. 2003); *see also In re W. Pointe Props., L.P.*, 249 B.R. 273, 282 (Bankr. E.D. Tenn. 2000). The procedure for compromise and settlement in the bankruptcy courts requires the filing of a motion seeking approval, notice served upon all creditors, the United States Trustee, and any other party requesting notice, and a hearing. *See* FED. R. BANKR. P. 9019.[7] The court's decision balances upon whether a settlement is "fair and equitable." *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 88 S. Ct. 1157, 1163 (1968). "The benchmark for determining the propriety of a bankruptcy settlement is whether the settlement is in the best interests of the estate." *In re Lee Way Holding Co.*, 120 B.R. 881. 890 (Bankr. S.D. Ohio 1990) (quoting *In re Energy Coop., Inc.*, 886 F.2d 921, 927 (7th Cir. 1989)).

---

[6] As discussed, the Motion for Turnover seeks disgorgement solely from the Debtor. For unexplained reasons, Mr. Shultz did not pursue the disgorgement action on behalf of the Trustee against Mr. Webber. That is the reason for the Show Cause Order.

[7] Rule 9019(a) of the Federal Rules of Bankruptcy Procedure requires, in material part, that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement. Notice shall be given to creditors, the United States trustee, the debtor, and indenture trustee as provided in Rule 2002 and to any other entity as the court may direct."

As an initial matter, it is evident that none of the required procedures were followed in this case. The Trustee could not give notice of the proposed settlement because Mr. Webber did not notify him that a final settlement was on the table and/or consult him prior to accepting it. Nevertheless, the Trustee, having been satisfied as to amount of the settlement, now seeks court approval after the fact to validate the settlement. At trial, the Trustee testified that he found the settlement to be fair, and the court agrees. Based upon the testimony and exhibits in the record, there were serious questions as to the amount, if any, of damages the Debtor might have been awarded had the Personal Injury Lawsuit proceeded to trial. In a letter to Mr. Webber dated September 8, 2005, Mr. Lockwood surmised a fair settlement range was anywhere from $15,000.00 to $20,000.00. In fact, the final settlement was $15,500.00 plus a waiver by the insurance company that paid the workers' compensation claim of any subrogation claim it might have to the proceeds. At the time, and now, after subtracting all non-exempt funds and attorneys' fees and expenses, the estate stands to recover funds for the benefit of the Debtor's estate. Because the settlement is fair and equitable and is in the best interests of the estate, the court will grant the Trustee's Motion to Compromise *nunc pro tunc* to February 1, 2006.

### III

The second issue concerns turnover of the non-exempt portion of the settlement proceeds. At the commencement of the Debtor's case, all of his legal or equitable interests in property became property of the estate pursuant to 11 U.S.C. § 541(a) (2005), and it remains so until abandoned by the Trustee or the case is closed. There is no dispute that the Debtor's case has not been closed. At

trial, both Mr. Shultz and Mr. Webber testified that they discussed the Trustee's possible abandonment of the Personal Injury Lawsuit before the settlement due to the subrogation claim held by CNA Insurance; however, the Trustee never abandoned the estate's interest.[8] Accordingly, the entire $15,500.00 in settlement proceeds from the Personal Injury Lawsuit was property of the estate, and the Trustee is entitled to turnover of any non-exempt portion, which would be a total of $8,000.00.[9]

Section 105(a) of the Bankruptcy Code defines the equitable powers of the bankruptcy court as follows:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105(a) (2005); *see also Casse v. Key Bank Nat'l Ass'n (In re Casse)*, 198 F.3d 327, 336 (2d Cir. 1999) (Section 105(a) provides bankruptcy courts with the ability and "power to take

---

[8] Bankruptcy Code § 554(a) provides:

> (a) After notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate.

11 U.S.C. § 554 (2005). Section 554(a) is implemented by Bankruptcy Rule 6007, which provides in material part:

> Unless otherwise directed by the court, the trustee . . . shall give notice of a proposed abandonment or disposition of property to the United States trustee, all creditors, indenture trustees, and committees elected pursuant to § 705 . . . . A party in interest may file and serve an objection within 15 days of the mailing of the notice, or within the time fixed by the court. If a timely objection is made, the court shall set a hearing on notice to the United States trustee and to other entities as the court may direct.

FED. R. BANKR. P. 6007.

[9] The Trustee does not dispute that the Debtor is entitled to an exemption of $7,500.00 "on account of personal bodily injury, not including pain and suffering or compensation for actual pecuniary loss, of the debtor[.]" TENN. CODE ANN. § 26-2-111(2)(B) (Supp. 2007).

whatever action is appropriate or necessary in aid of the exercise of their jurisdiction.") (quoting 2 COLLIER ON BANKRUPTCY ¶ 105-5 to -7 (Lawrence P. King ed., 15th ed. 1999)); *Childress v. Middleton Arms, L.P. (In re Middleton Arms, L.P.)*, 934 F.2d 723, 725 (6th Cir. 1991) (A bankruptcy court uses § 105 "in furtherance of the goals of the [Bankruptcy] Code.").

It has been held by the Sixth Circuit that "the bankruptcy court should deny all compensation to an attorney who exhibits a willful disregard of his fiduciary obligations to fully disclose the nature and circumstances of his fee arrangement under § 329 and Rule 2016. The authority to do so is inherent, and in the face of such infractions should be wielded forcefully." *Mapother & Mapother, P.S.C. v. Cooper (In re Downs)*, 103 F.3d 472, 479 (6th Cir. 1996); *see also In re Hackney*, 347 B.R. 432, 443 (Bankr. M.D. Fla. 2006) ("Attorneys who fail to disclose compensation timely should suffer strict and quick consequences including the imposition of sanctions or the disgorgement of all fees paid in the case."). Moreover, the Supreme Court "has held that conflicts of interest warrant the disallowance of debtors' attorney fees in bankruptcy cases . . . [since] 'reasonable compensation for services rendered' necessarily implies loyal and disinterested service in the interest of those for whom the claimant purported to act [and w]here an actual conflict of interest exists, no more need be shown in this type of case to support a denial of compensation." *Briggs v. LaBarge (In re McGregory)*, 340 B.R. 915, 922 (B.A.P. 8th Cir. 2006) (citing *Woods v. City Nat'l Bank & Trust Co. of Chicago*, 61 S. Ct. 493, 497 (1941)).

> Attorneys are obligated to exercise their utmost good faith in the discharge of their duties to their client. *Starks v. Browning*, 20 S.W.3d 645, 650 (Tenn. App. 1999) (citations omitted). Accordingly, lawyers exercise independent judgment on their clients' behalf. TENN. S. CT. R. 8, CANON 5. Lawyers must also avoid impermissible conflicts of interest. *State v. Locust*, 914 S.W.2d 554, 557 (Tenn. Crim. App. 1995); RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 16(3) (2000). A

> conflict of interest arises whenever there is a substantial risk that a lawyer's representation of the client would be materially and adversely affected by the lawyer's own interests or by the lawyer's duties to another client, a former client, or a third person. RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 121 (2000); *see, e.g., State v. Tate*, 925 S.W.2d 548, 552-53 (Tenn. Crim. App. 1995) (holding that a conflict of interest arises when a lawyer's regard for the duty owed to one client tends to lead to disregard of the duty owed to another client).

*In re Ray*, 314 B.R. 643, 654 (Bankr. M.D. Tenn. 2004).

Mr. Webber's actions in this case constitute a blatant disregard for his representation of the Trustee, and his actions in unilaterally settling and disbursing the settlement proceeds for the benefit of the Debtor without notifying the Trustee evidence a patent conflict of interest and constitute the violation of the Rules of Professional Conduct promulgated by th
e Tennessee Supreme Court. *See* TENN. S. CT. R. 8. First, he has violated Rule 1.7, which deals with conflicts of interest, by effectively and openly representing the Debtor while employed by the Trustee, despite their differing interests. As established by the testimony of Mr. Shultz and Mr. Hendon at trial, Mr. Webber did not disclose to the Trustee that he was proceeding forward with the Personal Injury Lawsuit and negotiating on the Debtor's behalf rather than that of the Trustee, just as he did not consult the Trustee regarding the February 2006 settlement. Along those lines, Mr. Webber has additionally violated Rule 1.2, which provides that "a lawyer shall abide by client's decisions concerning the objectives of the representation." The comments to that Rule also state that "[t]he client has ultimate authority to determine the purposes to be served by legal representation, within the limits imposed by law and the lawyer's professional obligations." TENN. S. CT. R. 8, RPC 1.2 (Off. Cmts.).

Because Mr. Webber's actions were not conducted with his client, the Trustee, in mind, his decisions concerning settlement of the Personal Injury Lawsuit without consulting the Trustee violate Rule 1.3, which provides that "[a] lawyer should act with commitment and dedication to the interests of the client and with zeal in advocacy upon the client's behalf." TENN. S. CT. R. 8, RPC 1.3. Similarly, Mr. Webber violated Rule 1.4 concerning communication by not even presenting the final settlement offer to the Trustee prior to accepting it. The comments to Rule 1.4 are clear regarding a lawyer's responsibilities to a client:

> Reasonable communication between the lawyer and the client is necessary for the client to effectively participate in the representation. When a decision about the representation must be made by the client, the lawyer must consult with and secure the client's consent prior to taking action. Thus, a lawyer who receives from opposing counsel an offer of settlement in a civil controversy or a proffered plea bargain in a criminal case should promptly inform the client of its substance, unless prior discussions with the client have left it clear that the proposal would be unacceptable. With respect to the decisions for which the client's prior consent is not required by Rule 1.2, the lawyer's responsibility is to keep the client reasonably informed. In some situations—depending on both the importance of the action under consideration and the feasibility of consulting with the client—this duty will require consultation prior to taking the action. In other circumstances, such as during a trial when an immediate decision must be made, practical exigency may also require a lawyer to act for a client without prior consultation. In such cases, and in other situations in which the client has impliedly or expressly delegated authority to the lawyer to take action without prior consultation, the lawyer must nonetheless act reasonably to keep the client informed of actions the lawyer has taken on the client's behalf.

TENN. S. CT. R. 8, RPC 1.4 (Off. Cmts.).

The Trustee's Motion for Turnover seeks to require the Debtor to disgorge and turnover the non-exempt portion of the $11,164.42 disbursed to the Debtor by Mr. Webber on February 6, 2006. There is no question that had Mr. Webber obtained court approval that the estate would have been paid the entire $15,500.00 in settlement proceeds subject to the Debtor's $7,500.00 exemption.

11

Additionally, because they were employed as special counsel to the Trustee, the required procedure to allow Mr. Webber and other special counsel to collect their attorney fees and expenses would have been by filing an application for compensation. After notice and a hearing, they would have been allowed appropriate fees and expenses. *See* 11 U.S.C. § 330 (2005); FED. R. BANKR. P. 2016(a).

In disregard of the Bankruptcy Code and the obligations to his client, the Trustee, Mr. Webber did not obtain court approval for the settlement, did not pay any of the proceeds to the Trustee, and did not file an application for compensation. As such, the court finds that it is solely the actions of Mr. Webber and his failure to abide by the Bankruptcy Code and comply with the Bankruptcy Rules that led to the necessity for the Motion for Turnover and Show Cause Order. As such, Mr. Webber, not the Debtor, is the culpable party.[10] He should be the one to turnover the $8,000.00 non-exempt balance of the settlement.

In summary, the court will approve the Trustee's Motion to Compromise, will deny the Trustee's Motion for Turnover, and will direct Charles T. Webber, Jr., to disgorge and turnover to the Trustee $8,000.00, representing the non-exempt portion of the $15,500.00 settlement proceeds, he disbursed on February 6, 2006, from his unauthorized settlement of the Personal Injury Lawsuit.

---

[10] The Debtor is clearly an unsophisticated consumer debtor unfamiliar with bankruptcy practice and procedure. When asked about the settlement proceeds delivered to him by Mr. Webber, he stated that he "followed the advice of my attorney." The court has no doubt regarding the truth of this statement.

An order consistent with this Memorandum will be entered.

FILED: November 16, 2007

                              BY THE COURT

                              */s/ RICHARD STAIR, JR.*

                              RICHARD STAIR, JR.
                              UNITED STATES BANKRUPTCY JUDGE